**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

MARTIN KUSTER,

       *Plaintiff*,

       v.

WESTERN DIGITAL
TECHNOLOGIES, INC.,

       *Defendant*.

Case No. 6:20-cv-00563-ADA

**ORAL ARGUMENT REQUESTED**

**DEFENDANT WESTERN DIGITAL TECHNOLOGIES, INC.'S**
**OPPOSED MOTION TO TRANSFER AND TO DISMISS**

i

# TABLE OF CONTENTS

I.      Introduction ...............................................................................................................1

II.     Background ...............................................................................................................1

III.    This Court Should Transfer This Action to N.D. Cal. For The Convenience of the
        Parties ......................................................................................................................3

        A.      The Private Interest Factors Favor Transfer ............................................4

                1.      The *Access to Evidence* Factor Favors Transfer ........................5

                2.      The *Availability of Compulsory Process* Factor Favors Transfer...............7

                3.      The *Convenience of the Witnesses and Parties* Factor Favors Transfer......9

                4.      The *Practical Problems* Factor Favors Transfer ......................10

        B.      The Public Interest Factors Favor Transfer ...........................................11

                1.      The *Court Congestion* Factor is Neutral ..................................11

                2.      The *Local Interest* Factor Favors Transfer ..............................12

                3.      The *Familiarity with the Law* Factor is Neutral........................13

                4.      The *Conflict of Laws* Factor is Neutral ....................................13

IV.     The Complaint Fails To State A Claim For Indirect Infringement or For Willful
        Infringement............................................................................................................13

        A.      The Complaint Fails To State A Claim For Induced Infringement ......................14

        B.      The Complaint Fails To State A Claim For Contributory Infringement ..............16

        C.      The Complaint Fails To State A Claim For Willful Infringement........................18

V.      Conclusion ..............................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010)..................................................................................7, 9, 10

*In re Adobe Inc.*,
   No. 2020-126, 2020 WL 4308164 (Fed. Cir. July 28, 2020).......................................... *passim*

*Affinity Labs of Texas, LLC v. Blackberry Ltd.*,
   No. W:13-CV-362, 2014 WL 12551207 (W.D. Tex. Apr. 30, 2014)..............................14, 15

*In re Apple, Inc.*,
   581 F.App'x. 886 (Fed. Cir. 2014) .................................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................13, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................13

*In re Bill of Lading*,
   681 F.3d 1323 (Fed. Cir. 2012).........................................................................16, 17

*Camatic Proprietary Ltd. v. Irwin Seating Co.*,
   No. 3:16-CV-0795-M, 2017 WL 2362029 (N.D. Tex. May 31, 2017) ....................7, 8, 12, 13

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) .......................................................................................14

*Deere & Co. v. AGCO Corp.*,
   No. 18-cv-827-CFC, 2019 WL 668492 (D. Del. Feb. 19, 2019)............................................18

*Document Sec. Sys., Inc. v. Seoul Semiconductor Co.*,
   No. 17-cv-00981-JVS, 2018 WL 6074582 (C.D. Cal. Feb. 5, 2018) ....................................19

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006)................................................................................14

*Dynamic Data Techs. v. Google LLC*,
   No. 19-cv-1529-CFC, 2020 WL 1285852 (D. Del. Mar. 18, 2020) .......................................19

*Finjan, Inc. v. Cisco Sys. Inc.*,
   No. 17-cv-00072-BLF, 2017 WL 2462423 (N.D. Cal. June 7, 2017) ....................................20

*Fintiv, Inc. v. Apple Inc.*,
No. 6:18-CV-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ..........................5

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009).........................................................................6, 9, 10

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016)..........................................................................................19, 20

*HSM Portfolio LLC v. Fujitsu Ltd.*,
No. 11–770–RGA, 2014 WL 4468088 (D. Del. Sept. 9, 2014)..............................16

*Inhale, Inc v. Gravitron, LLC*,
No. 1-18-CV-762-LY, 2018 WL 7324886 (W.D. Tex. Dec. 10, 2018) .....................15, 16, 18

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
No. 6:17–cv–00143–RP–JCM, 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) .................17

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009).......................................................................16

*M & C Innovations, LLC v. Igloo Prods. Corp.*,
No. 4:17-CV-2372, 2018 WL 4620713 (S.D. Tex. Jul. 31, 2018) .........................19

*Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 1-18-CV-309-LY, 2018 WL 8261315
(W.D. Tex. Nov. 30, 2018) ..................................................................................18

*Moskowitz Family LLC v. Globus Med., Inc.*,
No. 6:19-cv-00672-ADA, 2020 WL 4577710 (W.D. Tex. Jul. 2, 2020)........................ *passim*

*Raz Imps., Inc. v. Luminara Worldwide, LLC*,
No. 15-cv-02223-M, 2015 WL 6692107 (N.D. Tex. Nov. 3, 2015)...........................6

*Semiconductor Energy Lab. Co. Ltd. v. Chi Mei Optoelectronics Corp.*,
531 F. Supp. 2d 1084 (N.D. Cal. 2007) ..............................................................15

*Synkloud Techs., LLC v. Adobe Inc.*,
No. 6:19-cv-00527, D.I. 18 (W.D. Tex. Dec. 13, 2019) ..........................................5

*Uniloc USA, Inc. v. Blackboard, Inc.*,
No. A-17-cv-00753, 2020 WL 4578702 (W.D. Tex. May 15, 2020)......................6

*Välinge Innovation AB v. Halstead New England Corp.*,
No. 16-cv-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018)................18

*Vita-Mix Corp. v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009)..........................................................................14

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) (en banc) .......................................................... *passim*

*Word to Info, Inc. v. Facebook, Inc.*,
No. 3:14-cv-04387-K, 2015 WL 13870507 (N.D. Tex. Jul. 23, 2015) ............................11, 12

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
No. 17-cv-03848-RS, 2017 WL 4551519 (N.D. Cal. Oct. 11, 2017) .....................................20

*ZitoVault, LLC v. Int'l Bus. Machines Corp.*,
No. 16-cv-0962-M, 2018 WL 2971131 (N.D. Tex. Mar. 29, 2018)........................................14

**Statutes**

28 U.S.C. § 1400(b) ........................................................................................................................4

28 U.S.C. § 1404(a) ................................................................................................................1, 3, 4

35 U.S.C. § 271(c) ........................................................................................................................16

**Other Authorities**

Fed. R. Civ. P. Rule 12(b)(6) ..........................................................................................................1

Fed. R. Civ. P. Rule 45(c)................................................................................................................8

Fed. R. Civ. P. Rule 8 ....................................................................................................................13

On June 24, 2020, Plaintiff Martin Kuster ("Kuster") filed a complaint against Defendant Western Digital Technologies, Inc. ("WDT") alleging the infringement of two patents.  D.I. 1 ("Compl.").  Pursuant to 28 U.S.C. § 1404(a), WDT respectfully moves to transfer this action to the Northern District of California ("N.D. Cal.") "[f]or the convenience of parties and witnesses." Further, pursuant to Fed. R. Civ. P. 12(b)(6), WDT moves to dismiss Kuster's allegations of: (i) induced infringement, (ii) contributory infringement, and (iii) willful infringement.

## I.      INTRODUCTION

This Court should transfer this case to N.D. Cal. because it is a more convenient forum for the parties and the witnesses.  Kuster is based in Switzerland; WDT is headquartered in N.D. Cal. The Accused Products are not made or designed here.  The relevant documents did not originate here, nor are they stored here.  And not one relevant witness—not even Kuster—resides here.  The vast majority—if not all—of the U.S.-based sources of proof are in N.D. Cal.

Further, WDT requests dismissal under Fed. R. Civ. Proc. 12(b)(6) as to Kuster's induced, contributory, and willful infringement claims.  Such claims are threadbare—and do not plead even the minimum of what is required under Supreme Court and Federal Circuit authority.  Kuster's induced infringement claims fail because the Complaint does not allege the requisite specific intent; his contributory infringement claims fail because the Complaint fails to identify any component that forms the basis for the claim; and Kuster's willful infringement claims fail because Kuster's one-sentence reference to a letter does not meet his burden to plead willfulness.  Kuster's induced, contributory, and willful infringement allegations should be dismissed.

## II.     BACKGROUND

On April 30, 2020, Kuster filed suit against WDT's parent, Western Digital Corporation ("WDC"), in the Northern District of Texas.  *Kuster v. Western Digital Corp.*, Case No. 3:20-CV-01089 ("*Kuster I*"), D.I. 1 (N.D. Tex. Apr. 30, 2020).  Kuster alleged infringement of U.S. Patent

1

Nos. 8,705,243 (the "'243 patent") and 8,693,206 (the "'206 patent") (collectively, the "Asserted Patents"), the same patents Kuster asserts in this case.  After being informed by counsel for WDC that WDC would move to dismiss or, in the alternative, transfer because there was no basis for venue in the Northern District of Texas against WDC, Kuster filed a notice of dismissal without prejudice on June 24, 2020.  *Kuster I*, D.I. 18 (N.D. Tex. Jun. 24, 2020).  That same day, Kuster filed the present suit against WDT in this District.  D.I. 1.

Kuster does not appear to have any ties to Texas whatsoever, and certainly not this District. He is an individual who resides in Switzerland.  Compl. at ¶ 1.  He is the sole inventor listed on the face of the Asserted Patents.  Only one other entity associated with Kuster has any interest in this litigation, Nivalion AG, a litigation funder that is also based in Switzerland.  *See Kuster I*, D.I. 2; Declaration of Ahmed ElDessouki In Support of Defendant WDT's Motion to Transfer and to Dismiss ("AE Decl.") at ¶ 11, Ex. 16.

Along with its corporate affiliates, WDT is a "leading developer, manufacturer, and provider of data storage devices and solutions."  AE Decl., Ex. 21 at 4.  WDT's and its corporate affiliates' products help customers preserve and access all types of data.  *Id*.  WDT's and its corporate affiliates' broad technology and product offerings cover Client Devices (for example, flash-based embedded storage products and flash-based memory wafers and components); Data Center Devices and Solutions (for example, high-capacity enterprise HDDs, SSDs, and data centers); and Client Solutions (for example, HDDs and SSDs embedded into external storage products and removable flash-based products).  *Id*. at 6.  These products are marketed primarily under the HGST, SanDisk and WD brands.  *Id.* at 4.

A variety of Client Solutions—USB flash drives—are accused of infringement in this Action.  Specifically, Kuster alleges that WDT directly and willfully infringes the Asserted Patents

because it "made, used, sold, and/or offered for sale within the United States, and/or imported into the United States" a number of USB chip-on-board flash drives compatible with the USB 3.0 standard (collectively, the "Accused Products"). Compl. at ¶¶ 17, 23, 28, 36, 41. Kuster also alleges that WDT indirectly infringes the Asserted Patents by contributing to and inducing the infringement of the Asserted Patents. *Id*. at ¶¶ 26, 27, 39, 40.

WDT is incorporated in the state of Delaware. Declaration of Sridhar Nara In Support of Defendant WDT's Motion to Transfer and to Dismiss ("Nara Decl."), at ¶ 4. WDT's corporate headquarters are located in San Jose, California. *Id*. While WDT leases two office spaces in this District, these offices have nothing to do with the design, development, or operation of the Accused products. *Id*. at ¶¶ 7, 15–17. Moreover, the employees who work in these offices have nothing to do with the design, development, or operation of the Accused Products. *Id*.

WDT and its affiliates have large, established manufacturing, R&D, marketing, and administrative facilities in N.D. Cal. (in San Jose, Fremont and Milpitas). AE Decl., at ¶ 16, Ex. 21 at 29. While WDT and its affiliates also have principal facilities in Irvine, California; Longmont, Colorado; and Rochester, Minnesota; the U.S. sources of proof regarding the Accused Products are almost exclusively located in N.D. Cal. *Id*.; Nara Decl., at ¶¶ 5–13.

## III.   THIS COURT SHOULD TRANSFER THIS ACTION TO N.D. CAL. FOR THE CONVENIENCE OF THE PARTIES

WDT respectfully asks this Court to transfer this action to N.D. Cal. pursuant to 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses." In the Fifth Circuit, a district court considering a motion pursuant to 28 U.S.C. § 1404(a) is to consider a number of private and public interest factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc). The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing

3

witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. at 315.  The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id*.  The Court should grant the transfer motion where, as here, "the transferee venue is clearly more convenient." *Id*. at 315.

Venue is proper in N.D. Cal. under 28 U.S.C. § 1400(b) because WDT is headquartered in San Jose, California, in N.D. Cal.  Nara Decl. at ¶ 4.  As illustrated below, five of the eight relevant factors favor transfer, and three public factors are neutral; none weigh against transfer.  Thus, WDT respectfully requests that the Court transfer this action to N.D. Cal. "[f]or the convenience of parties and witnesses" under 28 U.S.C. § 1404(a).

### A.      The Private Interest Factors Favor Transfer

As further discussed below, the private interest factors favor transfer to N.D. Cal. because (i) there are no witnesses or documentary sources of proof located in the State of Texas and because WDT's offices and employees in the State of Texas have nothing to do with the design, development, or operation of the Accused Products, *id*. at ¶¶ 7, 15–18; (ii) the majority of WDT's sources of proof and U.S.-based witnesses who would likely testify about the design, marketing, and sales of the Accused Products are located in N.D. Cal., *id*. at ¶¶ 5–13; (iii) Kuster is an individual located in Switzerland and has no apparent ties to the State of Texas, Compl. at ¶ 1; and (iv) third-party witnesses with knowledge of systems prior art are located in N.D. Cal., outside the subpoena power of this Court, AE Decl. at ¶¶ 4–8.

4

As in *Adobe*, the private interest factors in this case "together tip 'significantly' in favor of transferring the case." *In re Adobe Inc.*, No. 2020-126, 2020 WL 4308164, at *2 (Fed. Cir. July 28, 2020) (nonprecedential).  This is despite the fact that Adobe had employed more than 350 employees in this District.  *Synkloud Techs., LLC v. Adobe Inc.*, Case No. 6:19-cv-00527 ("*Synkloud*"), D.I. 18 (W.D. Tex. Dec. 13, 2019) at 1–2.  In contrast, WDT has substantially fewer employees in this District, and none of them have anything to do with the Accused Products.  Nara Decl. at ¶¶ 15–18.  Moreover, unlike *Adobe*, there is no allegation that any of WDT's "employees working from its Austin, Texas office [] may have relevant information." *Adobe*, 2020 WL 4308164, at *3.  Indeed, they do not.  Nara Decl. at ¶¶ 15–18.  Also, unlike *Adobe*, certain key third-party witnesses will likely not agree to travel to this District to attend court proceedings. *Synkloud*, D.I. 18 at 1–2.

### 1.    The *Access to Evidence* Factor Favors Transfer

Under this factor, the court looks to where the relevant witnesses are located, in addition to "where documentary evidence, such as documents and physical evidence, is stored." *Moskowitz Family LLC v. Globus Med., Inc.*, No. 6:19-cv-00672-ADA, 2020 WL 4577710, at *2–3 (W.D. Tex. Jul. 2, 2020) (Albright, J.).  As to witnesses, this Court looks to the "totality of the circumstances, including but not limited to, 'the witness's title and relevant experience, the likelihood that a witness may have relevant information, the number of witnesses, the location of those witnesses, whether the testimony of those witnesses goes to an element of a claim, the amount of public information available to the parties, etc.'" *Id.* (quoting *Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *8 (W.D. Tex. Sept. 13, 2019)).  As to documents, the accused infringer likely possesses the bulk of the relevant documents in a patent case, and, as such, this factor weighs in favor of transfer to the location where the accused infringer

keeps its documents.  *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *see also Raz Imps., Inc. v. Luminara Worldwide, LLC*, No. 15-cv-02223-M, 2015 WL 6692107, at *5 (N.D. Tex. Nov. 3, 2015) (finding that the preferred forum is "the center of gravity of the accused activity," including where the accused product's "testing, research, and production as well as the place where the marketing and sales decisions occurred.").  Here, the center of gravity is *not* this District.  It is, unquestionably, N.D. Cal.

First, WDT is not aware of any potential witness whatsoever who resides in this District, or in the State of Texas.  Nara Decl. at ¶¶ 7, 15–18.  Kuster does not even reside in Texas.  Compl. at ¶ 1.  The key U.S. individuals that WDT has identified with knowledge regarding the Accused Products (including, but not limited to, product features and design, marketing, total addressable market, market share, sales and revenue) are all based in Milpitas, California, which is located in N.D. Cal.[1]  Nara Decl. at ¶¶ 5–13.

Second, this factor favors transfer where the transferee forum is more proximate to "relevant third parties to the case."  *Uniloc USA, Inc. v. Blackboard, Inc.*, No. A-17-cv-00753, 2020 WL 4578702, at *3 (W.D. Tex. May 15, 2020).  WDT has already identified several sources of potential system prior art located in California—Super Talent Technology Corporation ("Super Talent"; San Jose, CA), Patriot Memory, Inc. ("Patriot"; Fremont, CA), and Kingston Digital, Inc. ("Kingston"; Fountain Valley, CA)—two in N.D. Cal. and the other in the Central District of

---

[1] These individuals include: (i) Mr. Nara and members of his team, who are familiar with technical and business aspects of the Accused Products, Nara. Decl. at ¶ 6; (ii) Mr. Doan and members of his team, who are familiar with the technical aspects of the Accused Products, *id.* at ¶ 8; (iii) Mr. Pridgeon and members of his team, who are familiar with the marketing of the Accused Products, *id.* at ¶ 9; (iv) Mr. Calderon and members of his team, who are familiar with the industrial design of the Accused Products, *id.* at ¶ 10; and (v) members of the accounting and finance, customer technical support, and manufacturing operations and supply chain teams, *id.* at ¶¶ 11–13.

California ("C.D. Cal").  AE Decl. at ¶¶ 6–8.  Individuals with knowledge of the system prior art, therefore, reside in N.D. Cal. and the State of California.  *Id.*

Third, WDT does not have any documents, witnesses, or other sources of proof located in the State of Texas, much less this District.  Nara Decl. ¶¶ 7, 15–18 (providing testimony regarding the roles of WDT's Austin-based employees—all unrelated to the Accused Products).  The Accused Products are not designed or manufactured, in whole or in part, in this District, nor in the State of Texas.  *Id.* at ¶ 17.  Moreover, while most of the documents are stored electronically, the relevant U.S. documents likely originated in N.D. Cal. and, to the extent any physical copies exist, would be located in or proximate to N.D. Cal.  *Id.* at ¶ 18.  *See Moskowitz*, 2020 WL 4577710, at *3 n.2 ("[U]nder current Fifth Circuit precedent, the physical location of electronic document[s] does affect the outcome of this factor.") (citing *Volkswagen*, 545 F.3d at 316).

Access to sources of proof is demonstrably easier in N.D. Cal. as compared to this District; and, as such, this factor favors a transfer to N.D. Cal.  *See In re Acer Am. Corp.*, 626 F.3d 1252, 1254–55 (Fed. Cir. 2010) ("[T]he combination of multiple parties being headquartered in or near the transferee venue and no party or witness in the plaintiff's chosen forum is an important consideration.").

## 2.     The *Availability of Compulsory Process* Factor Favors Transfer

This factor favors transfer when the number of non-party witnesses that can be subpoenaed to attend a trial in N.D. Cal. is greater than the number that can be compelled in this District.  *See Camatic Proprietary Ltd. v. Irwin Seating Co.*, No. 3:16-CV-0795-M, 2017 WL 2362029, at *4 (N.D. Tex. May 31, 2017).  This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue."  *In re Apple, Inc.*, 581 F.App'x. 886, 889 (Fed. Cir. 2014).  Because a district court can only subpoena a non-

party witness if he or she lives within such district or if the trial is "within 100 miles of where the person resides, is employed, or regularly transacts business in person," witnesses in the State of California are beyond this Court's subpoena power. Fed. R. Civ. P. 45(c); *see Moskowitz*, 2020 WL 4577710, at *4.

As discussed above, WDT is not aware of any witnesses whatsoever—party or non-party— who reside in the State of Texas. Nara Decl., ¶ 7. By contrast, WDT has already identified non-party witnesses with knowledge regarding prior art products who are located in N.D. Cal.: Super Talent and its former employee Peter Carcione; and Patriot and its employee Les Henry.[2] AE Decl. at ¶¶ 6, 8, Exs. 1–5, 9–11, 22. Further, Kingston and its employee Andrew Ewing,[3] are located in C.D. Cal. *Id*. at ¶ 7, Exs. 6–8. These prior-art witnesses are located more than 100 miles from this Court and, as such, are not within the subpoena power of this Court. *Moskowitz*, 2020 WL 4577710, at *4; *Camatic*, 2017 WL 2362029, at *4.

Product prior art is highly relevant to this litigation because WDT already filed petitions for *inter partes* review ("IPR") on both Asserted Patents and stipulated that it "will not pursue invalidity [in this action] on the same grounds [that it pursued in the IPRs] if the Board institutes trial." *See Western Digital Corp. v. Kuster*, IPR2020-01391, Paper No. 1 at 18 (P.T.A.B. Aug. 4, 2020); *Western Digital Corp. v. Kuster*, IPR2020-01410, Paper No. 1 at 23 (P.T.A.B. Aug. 4, 2020).

---

[2] Mr. Carcione was a director of marketing for Super Talent at the relevant time and has knowledge of the Super Talent prior art products. AE Decl. at ¶ 6, Exs. 1–5, 22. Mr. Henry was a vice president of engineering for Patriot at the relevant time and has knowledge of the Patriot prior art products. *Id*. at ¶ 8, Exs. 9–11.

[3] Mr. Ewig was a USB business manager for Kingston at the relevant time and has knowledge of the Kingston prior art product. *Id*. at ¶ 7, Ex. 6–8.

Additional non-party witnesses include two patent attorneys who prosecuted the patent applications that led to the Asserted Patents, one of whom resides in N.D. Cal. and the other in Atlanta, GA.  AE Decl. at ¶ 9, Exs. 12–13.  Neither is within the subpoena power of this Court.

Because there are a substantial number of witnesses, including non-party witnesses, within the subpoena power of N.D. Cal. but no witnesses that can be compelled to appear in this District, this factor weighs heavily in favor of a transfer to N.D. Cal.  *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly."); *Acer*, 626 F.3d at 1255 (determining that subpoena power of the transferee court "surely tips in favor of transfer.").

### 3.   The *Convenience of the Witnesses and Parties* Factor Favors Transfer

Because the location of the proceeding would force U.S.-based witnesses to travel more than 100 miles to attend a proceeding in this District, this Court must also consider the cost of attendance for willing witnesses, which is "the single most important factor in the transfer analysis."  *Moskowitz*, 2020 WL 4577710, at *4 (citing *Genentech*, 566 F.3d at 1343); *Adobe*, 2020 WL 4308164, at *2 (finding that "district court failed to accord proper weight to the convenience of the transferee venue" where the vast majority of party witnesses and non-party witnesses resided in the transferee venue.).  The Fifth Circuit's 100-mile rule states that "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled" when that distance is more than 100 miles.  *Volkswagen*, 545 F.3d at 317.  The Court must consider not only monetary costs, "but also personal costs associated with being away from work, family, and community."  *Id*.

As identified in Sections IV.A.1 and IV.A.2, *supra*, several non-party and WDT witnesses reside in N.D. Cal.  Nara Decl. at ¶¶ 5–13; AE Decl. at ¶¶ 6–9.  Maintaining this action in this

District would impose on numerous individuals, including non-party witnesses—to the extent they agree to testify—the burden of travelling over 1,600 miles to attend proceedings in this District. Transferring this case to N.D. Cal. will greatly reduce this burden of travel.  And, because this action implicates several non-party witnesses, this factor weighs heavily in favor of a transfer to N.D. Cal.  *See Moskowitz*, 2020 WL 4577710, at *4 ("The convenience of party witnesses is given relatively little weight compared to non-party witnesses.").

Moreover, Kuster is an individual who resides in Switzerland.  Compl. at ¶ 1.  He is also the sole inventor listed on the face of the Asserted Patents.  Compl. at Exs. A, B.  In *Genentech*, the Federal Circuit held that overseas witnesses are "required to travel a significant distance no matter where they testify," so additional travel within the United States is not significant to a transfer analysis.  566 F.3d at 1344.  Therefore, Kuster's location does not impact the analysis under this factor.  *See also Adobe*, 2020 WL 4308164, at *3 (finding this factor weighed in favor of a transfer where plaintiff's "own employees will be coming from outside both districts.").

This factor overwhelmingly favors transfer because numerous non-party and WDT witnesses "will suffer the personal costs associated with being away from work, family, and community."  *Acer*, 626 F.3d at 1255 (internal quotations and citations omitted).  As was the case in *Acer*, these "costs would be significantly minimized or avoided by transferring the case to Northern California."  *Id*.

### 4.    The *Practical Problems* Factor Favors Transfer

The final private interest factor encompasses "all other practical problems that make trial of a case easy, expeditious, and inexpensive."  *Volkswagen*, 545 F.3d at 315.

Since March 2020, this Court has issued numerous Special Orders concerning the COVID-19 pandemic.  AE Decl. ¶ 13–15, Exs. 18–20.  The State of Texas "has seen an increase in COVID-

19 cases from 63 on March 15, 2020, to 481,000 as of August 5, 2020." *Id.*, Ex. 20 (Aug. 6, 2020 Order). Witnesses located in California must travel by airplane to attend court proceedings in this District. However, since health authorities declared the COVID-19 outbreak a pandemic, travel by airplane has become difficult and is associated with an increased risk of infection. While we do not know when the pandemic will end, we should not assume that such precautions will be lifted by the time of trial, or that such precautions will not become best practices going forward. For witnesses who reside in California, a transfer to N.D. Cal. would mean that driving is a plausible, easier, less time consuming, and certainly less risky alternative to flying across the country. Since the vast majority of witnesses reside in California, this factor weighs heavily in favor of transfer.

**B.    The Public Interest Factors Favor Transfer**

**1.    The *Court Congestion* Factor is Neutral**

Under this factor, the Court evaluates whether there is an "appreciable difference in docket congestion between the two forums," not "the court's general ability to set a schedule."[4] *Adobe*, 2020 WL 4308164, at *3. However, "[e]ach case is unique, and whether or not the case would progress more rapidly [transferor forum] or in the [transferee forum] is largely a matter of speculation." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015) ("*WTI*"). Statistics show that the average time for disposition of a

---

[4] Even if this Court's scheduling order were relevant, under this Court's Order Governing Proceedings for Patent Cases, a jury trial would be scheduled on or around March 2022, which is about 21 months from the filing of this action. The median time to a jury trial in a patent case in N.D. Cal. is 28.3 months from the filing of the action, *id.* at ¶ 10, which is not materially different considering that Kuster alleges *he* had knowledge of the infringement as early as September 21, 2018 but failed to bring this action until June 24, 2020. Compl. at ¶ 22. Moreover, the median time to a jury trial in a patent case in this District is 31.4 months, which is longer than the median time in N.D. Cal. of 28.3 months. AE Decl. at ¶ 10.

patent case in either district by jury trial is less than three years.  AE Decl. at ¶ 10, Exs. 14–15.

This factor is neutral where "[b]oth courts have an average case disposition time of less than three

years [*i.e.*, 36 months], meeting the standards of the Administrative Office of the United States

Courts."  *WTI*, 2015 WL 13870507, at *4.  Moreover, even if this Court "could more quickly

resolve this case . . . with several factors favoring transfer and nothing else favoring retaining this

case in Western Texas," this Court must not give this factor "dispositive weight."  *Adobe*, 2020

WL 4308164, at *3.

### 2.    The *Local Interest* Factor Favors Transfer

Under this factor, the Court must evaluate whether there is a local interest in deciding local

issues at home.  *Volkswagen*, 545 F.3d at 317.  "A local interest is demonstrated by a relevant

factual connection between the events and the venue."  *WTI*, 2015 WL 13870507, at *4.

There is no connection between this District and Kuster's acts of purported invention; nor

is there any connection between this District and WDT's alleged acts of infringement.  Kuster does

not have any connection to this District.  Kuster is an individual inventor who presently resides in

Switzerland.  Compl. at ¶ 1.  Moreover, the Asserted Patents list a Swiss address for Kuster,

suggesting that no acts of invention, conception, or reduction to practice of the purported invention

occurred in Texas.  *See* Compl. at Exs. A, B.

Moreover, WDT has a significant U.S. presence—including facilities and employees—in

N.D. Cal.  Nara Decl. at ¶¶ 5–13; AE Decl. at ¶ 16, Ex. 21 at 29.  And, even though the Accused

Products are sold in this District, they are also sold all around the country, Compl. at ¶ 17; thus,

this fact does not weigh against transfer.  *See Camatic*, 2017 WL 2362029, at *6 ("Although the

alleged infringing product has been sold in the [transferor forum], it is also in various other

locations around the country, so this does not affect the Court's analysis.").  By virtue of WDT's

12

significant presence in N.D. Cal., that district has a significant local interest in deciding the issues of infringement and invalidity of the Asserted Patents.  As such, this factor favors transfer.

### 3.      The *Familiarity with the Law* Factor is Neutral

Plaintiffs allege only patent claims.  Both this District and N.D. Cal. are equally capable of construing and applying patent law.  *See Camatic*, 2017 WL 2362029, at *7.  Therefore, the third public interest factor is neutral.

### 4.      The *Conflict of Laws* Factor is Neutral

The final public interest factor considers the avoidance of unnecessary problems of conflicts of law or the application of foreign law.  "[F]ederal district courts are of equal jurisdiction, and the national patent system, where all appeals go to the Federal Circuit, eliminates the risk of conflicting circuit precedent."  *Camatic*, 2017 WL 2362029, at *7.  Therefore, the fourth public interest factor is neutral.

In summary, this Court should transfer this action to N.D. Cal. because five of the eight factors weigh in favor of transfer, three are neutral, and not one weighs against transfer.

## IV.   THE COMPLAINT FAILS TO STATE A CLAIM FOR INDIRECT INFRINGEMENT OR FOR WILLFUL INFRINGEMENT

Federal Rule of Civil Procedure 8 requires Kuster to give WDT "fair notice of what the claim is and the grounds on which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and alteration omitted).  This notice "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  Kuster must plead "enough facts to state a claim to relief that is plausible on its face," *id.* at 570, and show "more than a sheer possibility that [WDT] has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## A.    The Complaint Fails To State A Claim For Induced Infringement

To plead inducement, a patentee must show that the accused infringer: (1) induced an underlying direct infringement; (2) had knowledge of the patent-in-suit; (3) possessed specific intent to encourage another's infringement; and (4) took active steps to encourage another's infringement.  *Affinity Labs of Texas, LLC v. Blackberry Ltd.*, No. W:13-CV-362, 2014 WL 12551207, at *2 (W.D. Tex. Apr. 30, 2014).  "[M]ere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement" are also required.  *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009).

First, Kuster did not adequately plead that WDT had pre-suit knowledge of the Asserted Patents.  Kuster simply alleges that he sent "a letter to Defendant by email and Federal Express dated September 21, 2018 that identified the [Asserted Patents]."  Compl. at ¶¶ 22, 35.  That's it.  But Kuster did not send a letter "to Defendant;" he sent a letter to SanDisk LLC, a sister entity to WDT.  *See* AE Decl. at ¶ 12, Ex. 17.[5]  Courts have refused to attribute knowledge of a subsidiary to its *parent*—and subsidiary to subsidiary is even more tenuous—and dismissed allegations of willful infringement on that basis alone.  *See ZitoVault, LLC v. Int'l Bus. Machines Corp.*, No. 16-cv-0962-M, 2018 WL 2971131, at *3 (N.D. Tex. Mar. 29, 2018) (refusing to attribute the parent defendant's knowledge of the patent to its subsidiary where the complaint failed to plead anything

---

[5] The Fifth Circuit has "note[d] approvingly" that "[d]ocuments [such as Kuster's letter to SanDisk LLC] that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his or] her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).  Here, Kuster relies on the September 21, 2018 letter to satisfy a key element of his claims for induced, contributory, and willful infringement; thus, the letter is central to his claim and is admissible for purposes of this motion.

more than the bare facts of the parent/subsidiary relationship).[6]  Importantly, Kuster did not even acknowledge that he sent the letter to a sister entity, and *not* WDT.  He certainly did not allege any facts about the corporate relationship, nor why it would even be plausible for WDT to know of the patents, or any purported infringement, based on a letter sent to a different subsidiary of WDC. As such, dismissal of Kuster's allegations of pre-suit induced infringement with prejudice is warranted on this basis alone, and Kuster's pleading as to post-suit induced infringement is insufficient as a matter of law.

Second, the Complaint includes generic, boilerplate language that WDT should be liable for induced infringement simply because it purportedly "actively and knowingly aid[s] and abet[s], assist[s] and encourage[es] others" to directly infringe the Asserted Patents.  Compl. at ¶¶ 26, 39. Kuster does not include any allegations of WDT's specific intent to induce or active steps to encourage another's infringement.   Such conclusory assertions—bereft of any evidentiary support—are insufficient. *Affinity Labs of Texas*, 2014 WL 12551207, at *5 (rejecting similar barebones allegations and noting that "such unsubstantiated assertions do not adequately support the more demanding specific intent requirement for a finding of induced infringement"); *Inhale, Inc v. Gravitron, LLC*, No. 1-18-CV-762-LY, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018) (dismissing claim for induced infringement where "the complaint contains no allegation that [accused infringer] specifically intended another party to infringe the patent and knew of that other party's infringement.").  As such, Kuster's pleading as to pre-suit induced infringement should be

---

[6] *See also Semiconductor Energy Lab. Co. Ltd. v. Chi Mei Optoelectronics Corp.*, 531 F. Supp. 2d 1084, 1115 (N.D. Cal. 2007) (finding, on summary judgment, that the parent company's knowledge of the patent was not imputed to subsidiaries because "[a]part from general allegations regarding ownership interests, [the plaintiff] has offered no evidence that would support imputing knowledge" from [the accused infringer] to its subsidiaries).

dismissed with prejudice, and Kuster's pleading as to post-suit induced infringement is insufficient as a matter of law.

### B.    The Complaint Fails To State A Claim For Contributory Infringement

In order to adequately state a claim for contributory infringement, Kuster must plead: 1) direct infringement, 2) that WDT had knowledge of the patents, 3) that the component has no substantial non-infringing uses, and 4) that the component is a material part of the invention.  35 U.S.C. § 271(c); *In re Bill of Lading*, 681 F.3d 1323, 1336-37 (Fed. Cir. 2012).  The *Twombly* and *Iqbal* pleading standards apply to contributory infringement.  *In re Bill of Lading*, 681 F.3d at 1337.  Specifically, Kuster must plead that WDT "knew that the combination for which its components were especially made was both patented and infringing and that [WDT]'s components have no substantial non-infringing uses."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009).  Similar to Kuster's induced infringement allegations, Kuster's contributory infringement allegations also fail.

First, Kuster claims that the same products (as a whole) render WDT liable for both direct and contributory infringement.  But contributory infringement refers to a *component* of the product, not the product itself.  35 U.S.C. § 271(c).  Kuster failed to allege any *components* of the products; he only asserted the products themselves.[7]  Such pleading is insufficient.  *Inhale*, 2018 WL 7324886, at *3 (dismissing claim for contributory infringement where the "complaint lacks any factual allegations permitting the court to reasonably infer the [accused product] is a component of a patented invention, is especially made for use in infringing the [asserted patent], and has no substantial non-infringing use."); *HSM Portfolio LLC v. Fujitsu Ltd.*, No. 11–770–

---

[7] Kuster provides boilerplate language that WDT sells, offers for sale, and/or imports "USB flash drives and/or components of USB flash drives" but never specifies what those purported components are.  Compl. at ¶¶ 27, 40.

RGA, 2014 WL 4468088, *1 (D. Del. Sept. 9, 2014) (dismissing contributory infringement claim because plaintiff asserted that the same product accused of direct infringement was the component accused of contributory infringement).

Second, as discussed *supra* at Section V.A., Kuster has not pleaded that WDT had knowledge of the patents.

Third, the Complaint simply does not plead any factual allegations to support contributory infringement.    Kuster's generic allegations merely recite the elements of contributory infringement. *See* Compl. ¶¶ 27, 40.   Not only does Kuster fail to identify any particular components of the accused devices, he also fails to provide any factual basis for why such components purportedly constitute a "material part of the invention," *id.*, or how such components are especially made or adapted for infringement of the Asserted Patents.   Without these allegations, it is impossible to infer that any components of the accused devices have no substantial noninfringing uses.   Such boilerplate allegations are insufficient to state a claim for contributory infringement. *In re Bill of Lading*, 681 F.3d at 1337 (plaintiff "must plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses"); *see also Iron Oak Techs., LLC v. Acer Am. Corp.*, No. 6:17–cv–00143–RP–JCM, 2017 WL 9477677, at *6–7 (W.D. Tex. Nov. 28, 2017) (dismissing claim for contributory infringement where "plaintiff plead general allegations and failed to identify the specific [components of the accused product] that was infringing and how those components were material and specifically adapted for infringement.").

Accordingly, Kuster's pleading as to pre-suit contributory infringement should be dismissed with prejudice, and Kuster's pleading as to post-suit contributory infringement fails as a matter of law.

### C.      The Complaint Fails To State A Claim For Willful Infringement

Kuster's willful infringement claims are similarly deficient and demonstrate, yet again, that Kuster failed to meet his burden.   Kuster's "threadbare recital of the elements of willful infringement, supported by mere conclusory statements, does not suffice." *Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 1-18-CV-309-LY, 2018 WL 8261315, at *3 (W.D. Tex. Nov. 30, 2018) (internal citation and alternations omitted) (quoting *Iqbal*, 556 U.S. at 678.).

Kuster is required to plead, among other things, that WDT had knowledge of the patent and of its infringement. *Välinge Innovation AB v. Halstead New England Corp.*, No. 16-cv-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018) ("[T]o sufficiently plead willful infringement, a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent.").

With respect to knowledge, as discussed *supra* at V.A., Kuster has not pleaded that WDT had the requisite knowledge.   Kuster's allegations of willful infringement should be dismissed on this basis alone.   *See Inhale*, 2018 WL 7324886, at *3 (dismissing claim for willful infringement in its entirety where the complaint failed to plead pre-suit knowledge of the asserted patent).

Second, Kuster simply alleges that he sent a letter identifying the patents.   He does not plead that the letter identified the Accused Products or that the letter explained how the Accused Products infringe the Asserted Patents.   Almost identical willfulness allegations have been dismissed on the grounds that such barebones allegations were insufficient.   *See Deere & Co. v. AGCO Corp.*, No. 18-cv-827-CFC, 2019 WL 668492, at *6–7 (D. Del. Feb. 19, 2019) (simply alleging that the plaintiff sent a letter that referred to four patents was insufficient to plead

willfulness); *Dynamic Data Techs. v. Google LLC*, No. 19-cv-1529-CFC, 2020 WL 1285852, at *2 (D. Del. Mar. 18, 2020), *report and recommendation adopted sub nom.*, No. CV 19-1529-CFC, 2020 WL 3103786 (D. Del. June 11, 2020) (recommending dismissal of willful infringement claims "in the absence of having received a pre-suit notice letter explaining why the accused products infringed the patents-in-suit.") (emphasis added).

Importantly, Kuster cannot plead that the letter explained how the Accused Products infringed the '206 patent. While Kuster did attach one claim chart as to the '243 patent, he only referenced the '206 patent as part of his patent portfolio. AE Decl., at ¶ 12, Ex. 13. Moreover, Kuster only identified one product (the SanDisk Ultra Fit) with respect to the '243 patent whereas, in the Complaint, Kuster identifies eleven products. So, while Kuster may be able to amend the Complaint as to certain allegations involving the '243 patent (and should be required to do so), he would not be able to amend his willfulness claims as to the '206 patent. As such, this Court should dismiss Kuster's allegations of willful infringement with prejudice.

Further, WDT requests that this Court dismiss Kuster's claim for willful infringement for the additional reason that Kuster fails to plead egregious misconduct. At most, Kuster alleges (without evidentiary support) that WDT had knowledge of the Asserted Patents and continues to infringe. Compl. at ¶¶ 22, 28, 30, 35, 41, 43. But, such an allegation is not enough. This is nothing more than "the kind of 'garden-variety' patent case that *Halo* affirms is ill-suited for a finding of willful infringement." *M & C Innovations, LLC v. Igloo Prods. Corp.*, No. 4:17-CV-2372, 2018 WL 4620713, at *5–6 (S.D. Tex. Jul. 31, 2018) (dismissing claim for willful infringement with prejudice) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016)). Kuster's allegations "do not support a plausible inference that [WDT's] conduct warrants enhanced damages under *Halo* and § 284." *Document Sec. Sys., Inc. v. Seoul Semiconductor Co.*, No. 17-

cv-00981-JVS, 2018 WL 6074582, at *3 (C.D. Cal. Feb. 5, 2018); *XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 17-cv-03848-RS, 2017 WL 4551519, at *6 (N.D. Cal. Oct. 11, 2017) ("Although [plaintiff] has alleged knowledge and continued infringement, it needs to do more to show that [defendant] has engaged in 'egregious cases of misconduct beyond typical infringement' that could possibly warrant enhanced damages." (quoting *Halo*, 136 S. Ct. at 1935)); *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017) (dismissing claim for willful infringement where plaintiff failed to plead both pre-suit notice *and* egregious behavior allegations "beyond typical infringement").  Kuster's allegations regarding willfulness should be dismissed.

## V.     CONCLUSION

For the reasons set forth above, WDT respectfully requests that the Court transfer this action to N.D. Cal. for the convenience of the parties.  WDT also respectfully requests the Court dismiss the claims for induced infringement, contributory infringement, and willful infringement for the reasons set for above.  Pursuant to Local Rule CV-7(g), WDT also requests an oral hearing on this motion.

Dated: August 17, 2020                    Respectfully submitted,
                                          /s/ *David P. Whittlesey*
                                          David P. Whittlesey
                                          Shearman & Sterling LLP
                                          111 Congress Avenue, Suite 1700
                                          Austin, TX 78701
                                          Telephone: 512.647.1907
                                          Facsimile: 512.857.6602
                                          David.Whittlesey@Shearman.com

                                          L. Kieran Kieckhefer (*pro hac vice*)
                                          Shearman & Sterling LLP
                                          535 Mission Street, 25th Floor
                                          San Francisco, CA 94105
                                          Telephone: 415.616.1124
                                          Facsimile: 415.616.1199
                                          Kieran.Kieckhefer@Shearman.com

Matthew G. Berkowitz (*pro hac vice*)
Shearman & Sterling LLP
1460 El Camino Real, 2nd Floor
Menlo Park, CA 94025
Telephone: 650.838.3737
Facsimile: 650.838.5141
Matt.Berkowitz@Shearman.com

*Counsel for Defendant Western Digital Techs., Inc.*

## **CERTIFICATE OF CONFERENCE**

On August 14, 2020, counsel for WDT spoke with counsel for Kuster regarding whether WDT's motion for transfer would be opposed.  Counsel for Kuster confirmed that WDT's motion for transfer is opposed.

 /s/ *David P. Whittlesey*          
David P. Whittlesey

## **CERTIFICATE OF SERVICE**

The undersigned hereby certified that a true and correct copy of the above and foregoing document has been served on August 17, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF.

 /s/ *David P. Whittlesey*          
David P. Whittlesey